**In re HIGHLAND HILLS,
LTD., Debtor.**

**Highland Hills, Ltd., Appellant,**

v.

**United States Department of Housing
and Urban Development,
Appellee.**

Civ.A.No. 3:98–CV–2415–D.
Bankruptcy No. 3:97–37470–RCM–11.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 26, 1999.

Craig H. Averch and Pamela R. Dunlop of Neligan & Averch, L.L.P., Dallas, TX, for appellant.

Frank W. Hunger, Ass't Atty. General, Washington, DC, Paul E. Coggins, United States Attorney, Dallas, TX, J. Christopher Kohn, Robert M. Hollis, Margaret L. Baskette, and James J. Faughnan, U.S. Dep't of Justice, Commercial Litigation Branch, Washington, DC, for appellee.

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS**

FITZWATER, District Judge.

This appeal from an order of the bankruptcy court denying a motion to compel payment of a postpetition expense presents the question whether the court erred in interpreting one of its prior orders. Concluding that it did not err, the order is **AFFIRMED.**

I

Appellant Highland Hills, Ltd. ("Highland Hills"), a chapter 11 debtor, owned

and operated an apartment complex known as Highland Hills Apartments (the "Apartments"). On April 12, 1971 Highland Hills entered into a regulatory agreement for limited distribution mortgagors under § 236 of the National Housing Act, as amended (the "Regulatory Agreement"), with appellee United States Department of Housing and Urban Development ("HUD"). Under this agreement, HUD insured the mortgage and the note that secured the Apartments. Highland Hills undertook specific duties for the operation and management of the property. One such duty was to provide management for the Apartments in a manner satisfactory to HUD. The Regulatory Agreement also permitted HUD to terminate any management contract with or without cause. If HUD terminated a management contract, Highland Hills was contractually obligated to arrange, with HUD's approval, for a new manager of the Apartments.

On March 1, 1989 Highland Hills executed, with HUD's approval, a housing management agreement (the "Management Agreement") with Credit Finance Corporation ("CFC"). HUD later exercised its right to terminate the Management Agreement, effective June 30, 1997. In an attempt to fulfill its duty to arrange for new management of the Apartments, Highland Hills requested that HUD approve Lexis Realty Corporation ("Lexis") as the new manager. Lexis had proposed to purchase CFC, retain its current employees, and manage the Apartments with those employees. HUD declined to grant such approval based on concerns that Lexis, as a new company and by using CFC's employees, could not properly manage a troubled property. Highland Hills nevertheless engaged Lexis to manage the Apartments.

Highland Hills thereafter filed for chapter 11 bankruptcy. From August 14, 1997 through March 27, 1998 Highland Hills operated the Apartments as debtor-in-possession and Lexis managed the property. In the performance of its role as manager of the Apartments, Lexis collected approx-

imately $444,274 in total rent income. Based on the standard management fee of 6% of the gross rentals income, Lexis requested a management fee of $32,054.71.

On March 27, 1998 the bankruptcy court entered an order denying plan confirmation and regarding motion to lift the automatic stay (the "MIP Order"). The MIP Order required that HUD "pay all of the unpaid postpetition expenses provided that such expenses are reasonable and were incurred with respect to the normal and necessary operations of the [Apartments]." MIP Order at 2. The order also provided it is "to be taken without prejudice to or waiver of any right of [HUD] or [Highland Hills] in any matter that has or may arise in connection with the [Apartments]." *Id.* at Attachment ¶ 8.

Highland Hills later requested that HUD pay certain postpetition expenses. HUD paid all of the expenses except Lexis' management fees, which it declined to pay because it had not, as required by the Regulatory Agreement, approved Lexis to manage the Apartments. Highland Hills filed a motion to compel HUD to pay this expense. The bankruptcy court denied the motion. The court noted that the MIP Order did not abrogate HUD's rights under its previous agreements with Highland Hills and that, in exercising its contractual rights, HUD refused to approve Lexis as manager of the Apartments. Because Highland Hills' engagement with Lexis to manage the Apartments was in violation of the Regulatory Agreement, the court held that the resulting management fees were not "reasonable" within the MIP Order's meaning of that term.

Highland Hills appeals the order denying its motion to compel.

## II

### A

■ Highland Hills asserts that the bankruptcy court erred in holding that HUD was not required to pay Lexis' management fees because they were not rea-

sonable. The court reviews this conclusion of law *de novo*. *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798–99 (N.D.Tex. 1986) (Fitzwater, J.).

### B

 Under the terms of the MIP Order, HUD was required to pay Lexis' management fees if they were "reasonable and were incurred with respect to the normal and necessary operations of the [Apartments]." MIP Order at 2. The MIP Order also expressly modified all the obligations of HUD, including the one in question, by providing that the order is "to be taken without prejudice to or waiver of any right of [HUD] or [Highland Hills] in any matter that has or may arise in connection with the [Apartments]." MIP Order at Attachment ¶ 8. This court may interpret this unambiguous * provision of the MIP Order as a matter of law. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (holding that consent decrees and orders should be construed in the same manner as contracts); *Walker v. United States Dep't of Housing & Urban Dev.*, 912 F.2d 819, 825 & n. 9 (5th Cir.1990). The terms of an unambiguous court order are interpreted according to their plain meaning and are enforced as written. *Certain Underwriters at Lloyd's of London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 186 (5th Cir.1997). By the plain language of the MIP Order, HUD's rights as detailed in its previous agreements with Highland Hills remained in effect.

Under the Regulatory Agreement, HUD and Highland Hills expressly agreed that HUD must approve any manager for the Apartments. Further, Highland Hills later agreed to submit a new management certification to HUD before it would allow a new manager to operate the Apartments or to collect a fee. Highland Hills had previously requested that HUD approve Lexis as the Apartments' manager, but HUD declined the request. Despite HUD's disapproval, Highland Hills engaged Lexis to manage the Apartments. Because this action violated the terms of the Regulatory Agreement, which remained in force after the bankruptcy court entered the MIP Order, the bankruptcy court did not err in holding that the management fees incurred by a non-approved manager were not reasonable.

\* \* \*

The bankruptcy court's August 12, 1998 order denying Highland Hills' motion to compel is **AFFIRMED.**

---

\* Neither party contends that any provision or term of the MIP Order is ambiguous.